# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **WILLIAM M. HENSLEY,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO.: 5:04-1177 |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's Application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, William R. Hensley (hereinafter referred to as "Claimant"), filed an application for DIB on January 21, 2003, alleging disability as of September 20, 2002, due to back pain, degenerative disc disease, arthritic spine, and severe facet arthritis.  (Tr. at 43-45, 27, 33.) The claim was denied initially and upon reconsideration.  (Tr. at 27-29, 33-34.)  On July 7, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 35.)  The hearing was held on February 6, 2004, before the Honorable James D. Kemper, Jr.  (Tr. at 224-59.)  By decision dated May 28, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 8-17.)  The ALJ's decision became the final decision of the Commissioner on August 30, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 4-6.) On November 1, 2004, Claimant

brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairment of chronic back pain/strain. (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13.) The ALJ then found that Claimant had a residual functional capacity for light work with additional limitations. (Tr. at 14.) As a result, the ALJ determined that Claimant was unable to return to his past relevant work. (Tr. at 15.) Nonetheless, the ALJ determined that Claimant could perform such jobs as office helper (light), order clerk (light), surveillance monitor (sedentary), and telephone solicitor (sedentary), which existed in significant numbers in the regional and national economy. (Tr. at 15.) On this basis, benefits were denied. (Tr. at 15-17.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

3

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on February 26, 1961, and was 42 years old at the time of the administrative hearing. (Tr. at 43.) Claimant has a high school education. (Tr. at 57.) In the past, he worked as a cashier, produce clerk, office clerk, deli clerk, and meat/seafood clerk for Kroger. (Tr. at 52.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to give appropriate weight to the opinion of a treating physician; (2) the ALJ erred in submitting a hypothetical question to the Vocational Expert at the administrative hearing; and (3) the ALJ failed to consider the effect of Claimant's obesity on his impairments. The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.

1. Treating Physician's Opinion

Claimant argues that the ALJ erred in failing to give appropriate weight to the opinions of Dr.

Smith, his treating physician. The Commissioner asserts that this argument is without merit.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation; (2) Nature and extent of the treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Dr. Lynn Smith treated Claimant's back pain and opined that Claimant was unable to work. On January 15, 2003, Dr. Smith completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical) and opined that Claimant was capable of only less than sedentary work. (Tr. at 142-46.) Dr. Smith found that Claimant could lift/carry only 10 pounds occasionally and could only stand/walk about 1.5 hours in an eight-hour day without narcotics. (Tr. at 142.) He opined that Claimant could sit only 15 minutes in an eight-hour day without interruption. (Tr. at 143.) In citing the medical findings supporting the assessment, Dr. Smith simply noted "pain and spasm" and "pain and restriction on exam." (Tr. at 142.) Dr. Smith's treatment notes contain few objective findings, but he states that Claimant cannot continue working "as he has" or "in the same capacity." (Tr. at 161.) Dr. Smith noted that Claimant required "relatively high narcotic doses." (Tr. at 161.) On June 9, 2003, Dr. Smith wrote a letter stating that Claimant was not capable of performing gainful employment and was not likely to become functional in the future. (Tr. at 199.)

The ALJ reviewed and summarized the medical evidence of record, including Claimant's treatment with Dr. Smith. (Tr. at 13-14.) The ALJ considered Dr. Smith's opinion, noting that he was the treating physician, but did not give it full or controlling weight because of other evidence to the contrary. (Tr. at 14.) The ALJ further found that Dr. Smith's opinion was based mostly upon Claimant's subjective complaints "that are not supported by the weight of the objective and credible medical evidence of record." (Tr. at 14.) Additionally, he noted that in stating that Claimant was disabled, Dr. Smith might have meant only that Claimant was unable to perform his past work. (Tr. at 14.) The ALJ noted that such a finding was actually consistent with the decision. (Tr. at 14.)

The ALJ properly noted that Dr. Smith's opinion appeared to be based upon Claimant's subjective complaints. As previously noted, the medical records contain few objective findings.

They indicate that Claimant suffers from back pain and takes narcotics. (Tr. at 160-70, 200-03, 206.) Dr. Smith noted in January 2003 that Claimant had an "inability to sit, ride, stand, or do any kind of lifting without excessive narcotic use, [and] I see no way that this gentleman can continue working as he has." (Tr. at 161.) He again referenced Claimant's subjective complaints in January 2003, stating that "when he is off from work at home, [the pain] . . . is manageable." (Tr. at 162.) A bone scan in October 2002 showed findings "in keeping with arthritic degenerative change," and Dr. Smith noted that although Claimant showed "fairly significant arthritic process," there was nothing else "we can lay our hands on at this time." (Tr. at 165, 172.)

In October 2002, an MRI showed two compression fractures and minor disc bulging. (Tr. at 173, 166.) The age of the compression fractures was unknown. (Tr. at 166.) Upon initial evaluation for physical therapy in 2002, Claimant's back range of motion was decreased 10-15 percent in bilateral side bending and rotation with flexion and extension limited 20 percent. (Tr. at 148.) Claimant's reflexes, sensation, and strength were equal and intact and straight leg raising was within normal limits. (Tr. at 148.) The physical therapist stated that at the time of the initial evaluation, he felt that Claimant suffered from "myofascial pain syndrome with possible underlying facet dysfunction, secondary to his poor posture." (Tr. at 148.) Dr. Leipzig noted in November 2002 that Claimant had multilevel mid-thoracic degenerative disc disease and old Scheuermann's disease and required "nonoperative measures alone." (Tr. at 131.) In December 2002, Dr. Joiner stated that Claimant had mild bilateral lumbar paraspinal tenderness and increased pain with extension. (Tr. at 137.) Sitting straight leg raising test was negative bilaterally. (Tr. at 137.) In January 2003, sitting straight leg raising test was negative and Claimant's strength was normal at 5/5.[1] (Tr. at 132.)

---

[1] Muscle strength is sometimes assessed on a scale of 0 to 5, with 0 indicating no movement, 1 indicating trace movement, 2 indicating movement with the aid of gravity, 3

7

Claimant does not assert that the ALJ failed to consider the requisite factors in considering Dr. Smith's opinion. Clearly, the ALJ considered all of the evidence of record, noted that Dr. Smith was a treating physician, and found his opinion not consistent with or supported by the other evidence of record. State agency physicians reviewed the record and determined that Claimant was capable of performing light work, citing the objective medical evidence. (Tr. at 152-59, 182-89.) Dr. Smith's physical medical assessment and treatment notes were based in large part on Claimant's subjective complaints, which the ALJ deemed not entirely credible.

Additionally, it does appear that Dr. Smith was stating that Claimant could not return to his work at Kroger, which is his past relevant work. (Tr. at 161-62.) Although he later opined that Claimant was "not capable of gainful employment," (Tr. at 199), such an opinion is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any significant weight. See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance). Accordingly, based upon the foregoing, the ALJ's determination regarding Dr. Smith's opinion is supported by substantial evidence.

2. Hypothetical Question

Claimant next asserts that the ALJ erred in submitting a hypothetical question to the Vocational Expert ("VE") at the administrative hearing. He argues that the question failed to take

---

indicating movement against gravity but not resistance, 4 indicating movement against resistance supplied by the examiner, and 5 indicating normal strength. The Merck Manual of Diagnosis and Therapy 1347 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

into account all of his limitations, including loss of mental acuity due to side effects of medications. The Commissioner asserts that this argument is without merit.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51, see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the Claimant's impairments."). A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-7 (8th Cir. 1996) (holding that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). If a Claimant's complaints are not credible, the hypothetical question posed to the vocational expert should contain no reference to them. See Jones v. Bowen, 841 F.2d

849, 851 (4th Cir. 1988.)

With regard to Claimant's mental acuity, Dr. Smith stated merely that Claimant's medication would eventually affect his mental acuity. (Tr. at 199.) He did not state that Claimant had symptoms or severe side effects such as this at the time of the report. Dr. Smith stated that the medication "would probably" affect Claimant's ability to perform any function mentally. (Tr. at 199.) As the ALJ noted, the only side effects Claimant reported from medication were weakening of the bones and nightmares. (Tr. at 241.) As there was no support in the record for problems with mental acuity, this limitation was properly not included in the hypothetical question.

The remainder of Claimant's argument appears to focus on Claimant's level of pain and ability to function. The ALJ determined that Claimant's credibility was only fair, considering Claimant's subjective allegations in connection with the other evidence of record, including Claimant's daily activities. (Tr. at 13-14.) The ALJ noted that Claimant reported being able to run errands, do light shopping, and cook dinner. (Tr. at 14, 249.) Claimant has not challenged the ALJ's finding in this regard, and the Court notes that the ALJ considered the appropriate factors pursuant to the applicable case law and Regulations. See 20 C.F.R. § 404.1529(b) (2004); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ took some of Claimant's subjective complaints into consideration, however in limiting him to light work with additional limitations, including no overhead reaching; no balancing; no climbing ladders, ropes or scaffolds; and only occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (Tr. at 14.)

Claimant contends that the ALJ likewise failed to consider the number of times that he missed work due to his conditions. Although Claimant testified that he missed work one to two days every two weeks due to his condition, this statement is not necessarily inconsistent with the ALJ's

determination that Claimant could not perform his past relevant work. (Tr. at 231, 14.)  Further, the VE testified that missing work one day every two weeks "falls just about under industry standards" and would not jeopardize employment. (Tr. at 258.)  Additionally, Claimant argues that his award of disability benefits through his employer's insurance policies indicates that he cannot perform any gainful employment. (Tr. at 103-05).  Claimant's argument fails, however, because determinations of disability by other governmental or nongovernmental agencies are not binding upon the Social Security Administration. See 20 C.F.R. § 404.1504 (2004) (decisions by other agencies are "based on its rules and is not our decision about whether you are disabled or blind"); see also Mullins v. Chater, 53 F.3d 328, *3 (4th Cir. May 4, 1995) (unpublished) (findings by other agencies not binding on Commissioner due to different applicable standards).

Based upon the foregoing, the undersigned finds that the ALJ's hypothetical question to the VE was proper and in accordance with the applicable law and Regulations.

3. Obesity

Finally, Claimant briefly argues that the ALJ failed to consider Claimant's obesity.  He argues that his physicians' treatment notes describe him as obese at 277 pounds.  The Commissioner asserts that this argument is without merit.

Social Security Ruling 02-1p provides guidance concerning the evaluation of obesity in disability claims and discusses the consideration of obesity at different levels in the sequential analysis. See Social Security Ruling ("SSR") 02-1p (2002)[2]. In Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), the claimant argued that the case should be remanded because the ALJ

---

[2] The Commissioner's brief cites Social Security Ruling 00-3p, which was superseded by SSR 02-1p.  However, there were no substantive changes in SSR 02-1p.

failed to consider her obesity. The United States Court of Appeals for the Third Circuit affirmed and refused to remand, noting that the claimant did not mention obesity as a condition that contributed to her inability to work and that remand would not affect the outcome of the case. See id. at 553. The Court concluded that the ALJ was alerted by the record that obesity could be a factor, but that the claimant essentially failed to pursue this avenue by failing to indicate how it limited her abilities. Id. The Court quoted and followed the reasoning of a Seventh Circuit decision, Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (per curiam):

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence. Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

Rutherford, 399 F.3d at 546 (quoting Skarbek, 390 F.3d at 504).

Similarly, in the instant case, Claimant failed to list obesity as an impairment in applying for disability benefits. (Tr. at 27, 33.) Additionally, even though obesity is mentioned in the medical records, Claimant fails to assert how it contributes to his inability to work. As the Commissioner notes, the record is devoid of evidence specifying limitations due to obesity. As in Skarbek, the references to obesity are in the records and thus alerted the ALJ and other reviewers to the impairment. The impairment was therefore considered, although indirectly. Nonetheless, the ALJ and the state agency physicians determined that Claimant could perform light work with additional

limitations, including postural limitations. Additionally, the Court notes that there is no indication in the record regarding Claimant's level of obesity (e.g., "severe," "extreme," "morbid") or his Body Mass Index ("BMI"). See SSR 02-1p. Claimant further testified that he tried to walk 30 minutes per day for exercise. (Tr. at 246.) Without an indication from Claimant regarding how he is limited by this impairment, the undersigned finds that the argument is without merit and that the decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: October 20, 2005.

R. Clarke VanDervort
United States Magistrate Judge